## SECOND CONGREGATIONAL SOCIETY IN NORTH BRIDGEWATER *versus* HENRY WARING *et al.*

Where land was conveyed to several persons, most of whom were members of an in corporated religious society, *habendum* to the use of such persons as should become pew-holders in the meetinghouse to be erected thereon, and the grantees organized themselves as proprietors under *St.* 1783, *c.* 39, it was *held*, that the legal title, upon such organization, vested in the proprietors as a corporate body, in trust for the pew-holders, the use shifting to those persons who thereafterwards became pew-holders ; and that the incorporated religious society, who occupied the land by the permission of the body of proprietors, for the purpose of public worship, might maintain trespass against an individual proprietor for obstructing them in such occupation.

TRESPASS, for breaking and entering the plaintiffs' close with a caravan of wild animals, on the 16th of May, 1834, and continuing thereon for several hours. The parties stated a case.

It was admitted, that the defendants went upon the close under a license from Nathan Hayward ; who claimed to be a tenant in common with others, of the close, and who set up a special possession of that portion of it on which the caravan was encamped.

The plaintiffs proved, that they worshipped in a meeting-house erected on the close, and that the land was made use of by their society, and persons coming to worship there, by passing over it with their carriages and horses, and tying their horses in all parts of it.

The defendants produced in evidence a deed, dated November 15th, 1825, by which Joseph S. Packard, for $171·47, conveyed a lot of land, including the *locus*, to himself, Hayward, and twenty-four others, " who have associated togeth er, and have entered into a contract as proprietors, for the

purpose of building and erecting on said lot a meetinghouse for the public worship of God," " to have and to hold said lot to the said proprietors, and to their heirs and assigns, and to each and every person who may hereafter become the lawful owner and proprietor of a pew in said house to be built and erected thereon, and which may and shall afterwards be rebuilt thereon by said proprietors, and their successors, to the use and behoof of said proprietors for the said purpose, and of each and every lawful owner and proprietor of a pew or pews in the meetinghouse to be built and rebuilt on said lot for ever."

Second
Congr. Soc
in North
Bridge-
water
v.
Waring.

It appeared that the grantees of Packard duly organized themselves as proprietors, under *St.* 1783, *c.* 39, held meetings, chose officers, had a treasurer, and claimed the land as proprietors.

The defendants also produced a letter of attorney, dated the 19th of August, 1826, executed by all the grantees in the abovementioned deed, except one Edson, and by three other persons, reciting that the signers " are seised in fee of certain shares, and parts of shares, each in his own right, in the new meetinghouse built by Nathan Hayward for us and himself," and appointing three persons their attorneys to sell or let the pews, and out of the proceeds to pay to each shareholder the sum paid by him for building the meetinghouse, and for other expenses, and to pay over the residue to the treasurer of the Second Congregational Society in North Bridgewater, to be appropriated to procure preaching for that society ; and it is stated to be the meaning of the parties, that the attorneys should convey pews to persons who had bid them off at a previous vendue, for the sum set in the estimate of pews, adding thereto the sum bid for choice ; and that every person who may become the lawful owner of a pew, shall be entitled to equal privileges with the original proprietors of the house, agreeably to the deed of Packard.

The defendants also proved, that that portion of the land which was occupied by the caravan, had been in the possession of Hayward from 1826, when the meetinghouse was built, to the present time, and had been used for the purpose of a lumber yard ; and that four or five years ago, one of the other proprietors, who was also one of their committee, gave Hay-

Second
Congr. Soc.
in North
Bridge-
water
v.
Waring.

ward leave to continue to occupy, he promising to make a rea-sonable compensation therefor.

On the 18th of June, 1825, the *St.* 1825, *c.* 43, was pass-ed, incorporating sixty-three persons therein named, (of whom twenty-one were grantees in the deed from Packard,) with their families and estates, together with such others as might thereafter associate with them, and their successors, into a so-ciety by the name of the Second Congregational Society in the town of North Bridgewater. This society was organized under the act, on the 15th of August, 1825. They have claimed the land in question, as the property of the society, have held meetings in the meetinghouse, have annually chosen parish officers and done other corporate acts, and have from time to time, ever since the building of the meetinghouse, complained of and forbidden Hayward's occupation of the land in question

The plaintiffs offered in evidence an agreement, dated the 23d of August, 1825, signed by all the grantees of the land and by two other persons, in which they say, that being desir-ous to erect a meetinghouse for the accommodation of the Second Congregational Society in North Bridgewater, they severally covenant to purchase of the building committee of the meetinghouse, and to pay for, the number of pews set against their names. — Also an agreement, dated the 7th of Novem-ber, 1825, signed by all the grantees of the land, except one Edson, and by three other persons, in which, after reciting that they had agreed to build a meetinghouse for public worship, they determine to divide the building and the expense of it, into thirty-two shares, to be owned by them in certain propor-tions, and Hayward agrees with the other parties to build the meetinghouse, and they severally agree to pay him therefor at the rate of $100 for one share. — Also a subscription paper, signed by nine persons, four of them grantees of the land and five not members of the society, in which the subscribers agree to pay the sums set against their names, for the purchase of land of Packard and an adjoining parcel, whenever the deeds thereof shall be executed in favor of the Second Congregation-al Society in North Bridgewater.

They proved that a part of the pews were sold by auction, and deeds given to purchasers by the attorneys before men-

tioned, and that a part of the pews remain unsold ; that the consideration of the deed from Packard was paid with the money collected on the subscription paper, except $47·67, which one of the grantees failed to pay according to his subscription, and which sum was paid by the attorneys out of the proceeds of the sales of the pews, after paying the proprietors of shares for their advancements to Hayward for building the meetinghouse ; and that the whole of the land was no more than would have been convenient and necessary for the accommodation of the congregation who would have worshipped in the meetinghouse if they had continued united ; thirty-two persons, among whom were Hayward and eight other grantees of Packard, having left the society in 1832.

If, in the opinion of the Court, the plaintiffs could maintain this action, the defendants were to be defaulted, and judgment to be rendered for five dollars damages ; otherwise, they were to become nonsuit.

*Beal* and *Latham*, for the plaintiffs, cited *Norton* v. *Leonard*, 12 Pick. 152 ; *Armstrong* v. *Peirse*, 3 Burr. 1898 ; *Bagshaw* v. *Spencer*, 2 Atk. 583 ; Com. Dig. *Uses, I* ; 4 Kent's Comm. 297 ; *Silvester* v. *Wilson*, 2 T. R. 444.

*Holmes* and *Eddy*, for the defendant, cited *Leffingwell* v *Elliot*, 8 Pick. 455.

PUTNAM J. delivered the opinion of the Court. We are all satisfied, that the deed of the *locus in quo* from Packard to Hayward and others, operated to convey the premises to them for the use of the proprietors therein named, and of each and every lawful owner and proprietor of a pew or pews in the meetinghouse to be built and rebuilt on said lot for ever. It is no valid objection, that the use was shifting. The grantees who were capable to take, did take upon the execution of the deed to them, and the use would legally shift to those who should thereafterwards become pew-holders. *Mutton's case*, Moor, 96, *pl.* 240 : where A. makes a feoffment to B., to the use of B. and of his wife that shall be, and B. afterwards marries, there the use vested in B. at first, but upon the marriage shifted to himself and his wife.

It is no valid objection, that the limitation of the use was to depend upon the contingency, that the *cestui que use* should

Second
Congr. Soc
in North
Bridge-
water
*v.*
Waring.

Oct. 25th,
1836, *at*
*Taunton.*

*May term*
1837, *at*
*Plymouth.*

Second
Congr. Soc.
in North
Bridge-
water
v.
Waring

become a pew-holder. When that event happened the use shift-
ed to him and others who held the estate before ; and those
who so held pews were tenants in common. Sanders on
Uses, 131.

The case finds that the grantees named in the deed were
organized as proprietors, held meetings, chose officers, had a
treasurer, and claimed the lot as proprietors. Those proceed-
ings were warranted by *St.* 1783, *c.* 39 ; and thereby the pro-
prietors became a corporate body and authorized to settle,
manage and improve their common lands, according to the
provisions of that statute. And they were, by a true construc-
tion of that statute, authorized to sue and defend in their cor-
porate capacity, in actions which should be brought by or
against them, and generally to manage for their common good,
by their officers and committees duly appointed.

After the proprietors became so organized, and so long as
the corporation continued, it was not competent for the indi
vidual proprietors to maintain actions of trespass in their own
name, nor in any way to obstruct the regular proceedings of
the corporation as to the management or improvement of the
common property. An individual might sell and convey his
share in the proprietary or corporation, and his grantee might
become a member, upon the same principles as a stockholder
of a bank or turnpike might do in respect to shares in such
corporations.

On the passing of the statute of 1825, *c.* 43, twenty-one
persons, who are named in the deed from Packard, were, with
their families and estates, and with others who should there-
after associate with them, incorporated as a religious society.
The title to the land did not vest in the religious society, for
they were incorporated for certain other and distinct purposes.
So it was held in *Leffingwell* v. *Elliot,* 8 Pick. 457, that an
incorporation for a particular intent, for example, for manufac-
turing purposes, does not vest in the corporation the lands
owned by the corporators as tenants in common. They could
carry on their business of manufacturing, without altering the
tenure of their estate. It was the object to give corporate
powers, to the end that the corporators might more conven-
iently do their work. But in the case of the creation or for-

Second
Congr. Soc.
in North
Bridge-
water
v.
Waring.

ination of a corporation, pursuant to the statute of 1783, by the owners of land held in common, the land is the subject and the whole subject matter of their organization. The individual members or proprietors give up to the corporation, rights which they might otherwise have exercised. It is the corporation, by their legal officers, who are to manage the common property ; and it is not in the power of a minority of the individual proprietors to resist the corporate will. If the corporation determine that the property shall be occupied for the common good, in a particular way, an individual or all the individuals who are in the minority, are not therefore remitted to their rights as they existed before the organization, but he and they are bound to submit to the doings of the majority.

From the facts and papers to which we are referred, we must presume that the corporation formed by the grantees do permit and have permitted the plaintiffs, the incorporated religious society, to occupy the land for the purposes originally intended. The case finds that the plaintiffs worshipped in the meetinghouse erected on the premises, and that the lot was made use of by their society and persons coming to worship there, by passing over it with their carriages and horses, and tying their horses in all parts of it. The legal title was vested in the corporation which the grantees formed. But they held the estate as trustees for the religious society. Upon the dissolution of the corporation, so formed, the title of the estate remaining in them would, by the operation of law, revest in the proprietors, but they would hold as trustees for the religious society.

We must presume from the facts found, that the corporation formed by the grantees of the land, are willing and desirous that it should be managed or improved in the manner in which the incorporated religious society do improve it, for purposes connected with public worship. But the defendants contend, that they, as individual proprietors, may lawfully obstruct the corporate will ; and that they, individually, may take and appropriate a part of the land for the accommodation of a caravan of wild beasts. But we are all satisfied that the defendants cannot maintain this defence. It is inconsistent with the rights of the pew-holders, to whose use it was conveyed to the

Second
Congr. Soc.
in North
Bridge-
water
v.
Waring.
grantees ; and it is inconsistent with the power and authority which the grantees have delegated to the corporation which they formed. And although the legal title is not in the incorporated religious society, yet they are to be considered as the *cestui que trusts* ; they are in possession by the consent of the corporation formed by the tenants in common ; and being so possessed, they may maintain trespass against the defendants, who set up their individual claim against the will of the corporation formed to manage the property for the common good, according to the original intent of the associated grantees.

It is the opinion of the whole Court, that the plaintiffs are entitled to recover in this action ; that the defendants should be defaulted ; and that the damages be assessed in the sum of five dollars, according to the agreement of the parties.